2440673 United States of America v. Jesus Eloy Garcia. You may proceed. Good morning. May it please the court and counsel. My name is Oscar Vela and I'm here on behalf of the appellant in this case, Mr. Garcia. And the issue raised in this case was whether a particular BOLO provided reasonable suspicion and whether the collective knowledge doctrine could be used to justify an investigatory detention. The facts of this case are simple. On June the 9th, 2002, officers received a shots fired call that reported six shots were fired into the air. The officers responded to the scene and one particular identified information was provided to the officers. There was a black SUV who had been seen with one occupant who the driver had pulled out his hand of the window and shot into the air. Later on, another witness identified that it was potentially a Cadillac. That was the only information that was provided at the scene to the officers. Approximately two and a half miles away from the scene of the shots fired incident, an officer discovered a gray Cadillac parked in a residential home, unoccupied by any occupants. He went up to the vehicle, touched the hood, and he said that the engine was still warm. At the suppression hearing, one of the officers, when asked if they had reason to suspect that this vehicle was the same vehicle that had been reported in the shots fired, Officer Fierro responded that they did not have any information to believe that this vehicle was a suspect vehicle or not because they did not have any information that had been provided by anyone. After the officer arrived at this residential homestead, he took down the license plate of this vehicle. He ran it in his system and the officer discovered that this vehicle had been pulled over five days earlier on some traffic stop. He identified two individuals, Eduardo Ciprian and a minor, and put the information into the system. It's reflected in the Defendant's Exhibit No. 7, which is part of the exhibits that were submitted into evidence. Another officer also testified at the suppression hearing that they had no idea that this particular vehicle had been reported in the shots fired call. However, when the officers presented the BOLO, they wrote down that… Mr. Vela, I'm speaking only for myself and not for the panel, but we've read the briefs and you're spending a lot of time on the facts that we've already read instead of going to your legal argument, but if the other judges want to hear the facts again, that's fine. Sure. I'm speaking for myself. Justice Smith, the legal argument in this case is that this BOLO provided insufficient reasonable suspicion based on what the officers knew at the scene of the shots fired incident. The information that was discovered by the officers after the fact by some mere hunch is insufficient to support a reasonable suspicion to justify the stop. And this court… I have a couple of questions about the district court's findings related to the BOLO, if that would be okay. Yes, ma'am. Mr. Vela, do you agree and concede that the district court determined that the BOLO's sources were the investigation at the crime scene, the 911 call, and the witness' interview, and Officer Garza's observations on Park Avenue, and Officer Morales and Elizondo's traffic stop, that all of those things comprise what went into the BOLO? I do not. I do concede what the judge said. That's what the judge said? Yes. So you would have to factually find clear error, or maybe you don't believe it's clear error, but the judge said that the information in the BOLO contained all those things. Which of those things did it not contain, and what is your evidence to support that? I believe the judge had given the most weight to what Officer Garza found on the scene, and the judge found that Officer Garza's identification of the license plate and putting the license plate into the BOLO was what, I guess, got this BOLO over the hump. However, as the officers testified at the hearing, they said that they did not know that this particular vehicle was the vehicle that had been identified at the shots fired call. It was just something that Mr. Garza had entered into the system because he went to a resident that was two and a half miles away from the scene of the shots fired call, and entered a license plate. When he entered the license plate, he entered the name of two individuals, which did not include my client, and I think that was a factual error based on the evidence that was provided by the officers. You believe it was clear error for the district court to determine that the BOLO was based upon Officer Morales' and Elizondo's traffic stop, is that correct? Yes, Judge. And specifically-  And the evidence that shows that it's clear error is what? It is based on Officer Fierro's testimony. I had a record on appeal 540 that he says when they entered the plates, they had no idea that this was the vehicle that had been identified. It was just an entry of information because what Officer Garza had seen when he arrived at this residence, but he specifically testified, and I quote, we did not know if it was the suspect vehicle or not because we didn't have any information about the specific vehicle. This is a record on appeal 539. So the district judge entered in her findings that this particular piece of evidence was one of the totality of circumstances that was entered into the finding that the BOLO was sufficient for reasonable suspicion. However, the only thing they knew at the scene, the only thing that Officer Garza knew when he arrived at this residence was that there was a black SUV that had been reported. And so the fact that he discovered a license plate after the fact, not knowing whether this car was involved in the shots fired incident or not, did not support reasonable suspicion. So does it matter though if Garza knew what was going on at East Travis and Bartlett? As long as the collective knowledge of the Laredo Police Department was distilled in the BOLO that Captain Ortiz said he did rely upon for the stop. There was collective knowledge in the BOLO before the stop was made. I think there's a fine distinction, Chief Judge Elrod, if at the scene somebody had reported this particular vehicle with a license plate and they had stopped the vehicle a couple blocks away, a mile away, because they saw that this was a black SUV driving or because they had identified a license plate, that would be different. But in this case, the only thing they knew was that it was a black SUV. The vehicle they found at the residence was a gray SUV. They had no idea that this license plate, whether it was or wasn't the vehicle, because it had not been identified. So they could not take information that Officer Garza obtained at some other location with no information whether or not this was the vehicle or not and then use that to support a reasonable suspicion at BOLO. So if the underlying officers did not have reasonable suspicion, then the collective knowledge doctrine would not apply because the court has found that if the underlying reporting officers or the tip that's reported is insufficient, then the collective knowledge will not save the reasonable suspicion determination. Okay. Did the BOLO say that the tags were temporary and the vehicle had temporary tags? Yes, Judge, it did. Did the, so you're saying, did the BOLO have a wrong color? No, the BOLO had the right color. Yes. Gear, make, model. Correct. Correct.   And the license plate, though, was slightly off, wasn't it? But within two digits, is that right? Right. You agree with all of that? I agree with that. Okay. I still don't understand that that itself would not give Ortiz reasonable suspicion, stuck, even on just the BOLO alone. Yes, Judge. Again, the difference is that what Ortiz discovered at some other location, not at the shots fired, called the fact that he wrote down a license plate of some vehicle that he found parked in the driveway, is none of that information was reported from the shots fired incident. So that information is like a random vehicle or a hunch. It's a red car. The information that Ortiz, that Garza found at the home, was something he observed and he wrote down, and then he used that to try to turn it into a reasonable suspicion stop under the BOLO. But that information was not provided by any witness. And the officers admitted on the record that when Officer Garza approached this vehicle at this residence at some other location, he had no idea that this was the car that they had reported. So that cannot provide reasonable suspicion to justify the stop because they had no information that this vehicle was even involved or suspect that it had been involved. It was just an observation. And that's the distinguishing factor, Judge. Thank you. In relation to the issue of what evidence was found as a result of the stop, if this Court sustains my issue on appeal that there was insufficient reasonable suspicion to justify the stop, the next question becomes whether the observations that were made by the officers at the scene of the stop would constitute something that the Fourth Amendment would be able to suppress. The Court found that my client had no expectation of privacy and that this was not something that the Fifth Circuit would be likely to suppress. However, the Supreme Court in United States v. Cruz, in United States v. Fisher, has identified that observations of police officers are suppressible information. In fact, in United States v. Cruz, officers took a suspect and got his photograph and then used that photograph to show it to a victim. The victim identified the defendant through the photograph and the Court in that case, in the Supreme Court, said that identity from observations from officers are suppressible evidence. And the reason why the Court did not overturn the decision in that case was because the witness had independently identified the defendant because she was the victim of the crime. And so that's the distinguishing factor here. So it's not that we're suppressing my client's name. It's the observations that were made as a result of the unjustifiable stop in this particular case that we're arguing would be suppressible. Are you, I understand you to be arguing that he has an expectation of privacy in the jewelry that he was wearing? Well, he has an expectation of privacy in the location that he was at. So he was in a car and he was pulled out. If the officers would have seen him on the street, I'm here before you today and I'm wearing a specific kind of ring. If you make those observations in public because I'm here, then I cannot claim that I have a subject expectation of privacy. But if I'm in a vehicle, yes, I'm in public, but it's subject to privacy just like the phone booth was in Katz. Even though people can see the conversations that are happening inside the phone booth are still private. In this case, what was happening inside the vehicle, that he was wearing a particular necklace and a particular jewelry, was not open to the public to see. It was not until he was pulled out of the car and kept on the scene for 30 minutes that the officers made observations because they pulled him out of the car. And so my client had an expectation of privacy to be in the vehicle. And if he would not have been pulled out of the vehicle, the evidence would never have been discovered, at least the observations that the officers used to make the comparison. Just like in the case of Cruz. But assuming that there is reasonable suspicion, then this argument doesn't work, right? If the court finds that there was reasonable suspicion, then there would be no suppression. Because he would be on the street then and you could see the jewelry. That's correct, Judge. And the reason the jewelry matters is because it's stolen jewelry or something? No, what happened... It ID'd other jewelry from another place. What happened, Justice, is that they saw a photograph of a gentleman wearing a mask with specific kind of jewelry. And so they compared what they had seen at the scene to this photograph. To the photograph, but yeah, that's... Yes. And it is the same jewelry? Yes. So, okay. Okay. Any other further questions? No, do you have anything further? Okay, thank you. You've saved time for rebuttal.  Ms. Wilson. Good morning. May it please the court. My name is Eileen Wilson on behalf of the government. This court should affirm the district court's denial of the motion to suppress. As evidenced by its comprehensive order, the totality of the circumstances establish the Bolo provided reasonable suspicion to detain Garcia and he wasn't unduly detained. The court found that the Bolo was thorough, vetted, and specific. As you pointed out, Judge Elrod, it was based on the incident report, the 911 callers, witness interviews, and LPD, Laredo Police Department's investigation. The Bolo, as it had to be, also was specific. Included the date and the time, the SUV's color, make, model, and license plate, and the possible occupants. It's obvious that officers Elizondo and the other officer were involved in that because that's who identified the occupants. Officer Garza testified about finding the SUV within a couple miles, and he identified it based on the color, the SUV, and the worn engine. You have to remember this is the middle of the night, so there's probably not a lot of activity on the street, and so he was driving around trying to do the investigation. He didn't have any information on possible occupants, and if you look at the Bolo that I put in my brief, it says UTL, which means that he was unable to locate anyone. That's not developed well in the record, but it is in the Bolo. Therefore, they had to rely on the prior officers about the stop five days earlier, and that's how all of that comes together. Of course, Captain Ortiz was allowed to rely on this collective knowledge, and he thought of the Bolo before he stopped behind the car and approached them. What do you say to the argument by your friend on the other side that the officer said they did not rely upon that, one of the officers? Well, I think you have to realize five people testified, I believe two of whom were on the scene. That and meaning on the scene in relation to when the shots were fired, and that would have been Fierro and Elizondo, so they wouldn't have information in that regard. Captain Ortiz, we know he relied on the Bolo because he said, he testified that that's why he pulled them over, or that's not correct, but why he followed them, and why when they stopped, he got out. The task officer, Morales, who's the other one that testified, he responded because he works or he's assigned to the ATF who was investigating independently the shots fired. So you have the Laredo Police Department investigating it, and you also have ATF investigating it, and that's why Officer or TFO Morales was called to the scene. The only other person that testified at the suppression hearing was Leal, and he arrested Ciprian. So that's where their knowledge comes from, and if you look at where they were independently, then it makes sense how the rest of the case comes together. For whatever reason, I don't know, but Garza did not testify, and Garza's the one who found the SUV in the middle of the night with the warm engine. In relation to why it was not unduly prolonged, as the evidence in the law and the district court's conclusions state, the LPD officers and Officer Morales or Task Officer Morales were diligently pursuing their independent investigations. They were trying to determine who had fired these shots in the air that obviously could have hurt somebody. They were entitled to draw on their own inferences and experiences and specialized training. Also, it was an unreasonable delay. This court has plenty of cases where it has found stops or investigations not unduly prolonged that were far more than this particular case. Also, for the same reason, he wasn't de facto arrested, meaning Garcia. There's no legal stopwatch for stops and delays like this. What the court has to look at is the totality of the circumstances, and from what we can see, there's diligence throughout. I appreciate if the court hasn't looked at the body cams, but the district court had the benefit of that, and what you can see- How come we didn't have that? Pardon me? I didn't hear you. We only have the screenshots in the record. It's not in here, the record. Did you know that? No, I didn't. One of us can get that to you. I mean, is it pertinent to the case? Because we have the screenshots, because the screenshots are the- Well, I don't want to misrepresent his position. My position would be it is, because you see there's two officers with body cams, and what you see, a lot of it's in Spanish, a lot of it is that you just see them searching the vehicle, but what's important, and from my perspective, is you see Garcia standing, leaning against a vehicle. He's not handcuffed. He's not otherwise restrained, and he's very relaxed. He's smiling sometimes, and while the conversation goes back and forth in Spanish and English, one of the officers, they're talking about high school with him and maybe his sister, so he clearly doesn't feel like he's under some type of threatening environment. That's not to say that he's not being detained, because he is, but I think that goes to the totality of the circumstances, and I, one of us, we can talk after, but we'll make sure that the court gets that. If either counsel believes it's pertinent, please make sure that we, and it's appropriately in the record, that we have access to it. And I just can't explain why. Sometimes we, too, have problems getting the exhibits from the district court. I just don't know. Right, but like I said, if it's not, if you both don't think it's pertinent, we're not requiring you, but if one of you thinks it's pertinent, then please provide that if it is in the record. We'll do that. So what the district court had the benefit were the five witnesses, and I explained where they all came from. You had some that were present in response. The first responders, if you will, to the shots fired. Then you had Captain Ortiz leading off with the ultimate stop, and then you had the task officer Morales, who responded on behalf of ATF, and then Officer Leal, who arrested Ciprian. And one of the things, the PSR develops this a little bit more, but the judge talks about it in the order, but what happened is when Ciprian was taken to the station, Officer Morales ultimately went there, too, and he was asking him about the shots fired. Now, obviously, this is a little bit different, but the point being the reason that they wound up, wound up with identifying in the felon in possession charge, which is what Garcia was convicted of here, is they were asking him about the shots fired. He consented to let them look at his phone, and one of the things they see is Ciprian and a masked individual holding guns, and because of the jewelry, which Officer Morales had identified, they were able to trace that back to Garcia, and the jewelry is pretty distinct, as you'll see in the video when we get that to you. But as the district court found, the slight delay in Officer Morales getting there didn't impose a Fourth Amendment hardship, and again, Garcia wasn't handcuffed or otherwise detained. In relation to the privacy, as this court knows, even if you have an illegal type stop, identity is not protected by the Fourth Amendment, and again, here you have this individual with pretty distinct jewelry, and that's how they were able to tie it to get to him, because the Fourth Amendment doesn't protect someone who knowingly exposes themselves to the public, and even if, and I believe that the video is very clear that Garcia doesn't show an expectation of privacy in relation to his jewelry, that you have to satisfy the second prong is that society has to deem it reasonable, and I think it's fair to say that society would not deem that reasonable, and again, I believe that the collective knowledge all comes together, and there was a reasonable basis, I mean, a reasonable basis for the stop. I know it's not a traffic stop, but the detention, if you will, and the delay. Unless the court has any further questions, I'll yield the remainder of my time. Thank you, we have your argument. Thanks. Mr. Vela, you save time for rebuttal. Yes, Judge, thank you. We did submit a USB with exhibit one and two, which were the body cams, into the record. I'm not sure why it wasn't sent up, but the clerk spoke, we'll check on that before the court. The issue here, again, is that the officer, Captain Ortiz, who pulled over my client and conducted the investigative stop, he had no independent knowledge, so he was relying on the BOLO. In the government's brief at page seven, they identified the BOLO that has been issued, and the BOLO is very good because it's clear and it has a lot of information, but again, the information that was provided in the BOLO was not provided by an independent witness who had seen a particular vehicle with a license plate. It was done by an officer who went to a random house and entered information because he observed information. At the suppression hearing, both Officer Fierro and Officer Elizondo testified that he did not enter the plates into his report until he went to the scene. If an officer sees any vehicle on the street with a missing taillight, the officer would be able to make a stop based just on that, isn't that correct? He might be able to if it's in the same location, if it's within a certain amount of time frame. Well, no, it goes further than that. If that's a violation of the traffic laws to have a missing taillight, then they can pull a vehicle over for no other reason, no other suspicion. Yeah, and normally the way the situations go is that there is an incident, officers are around the area, there's reports by witnesses, and they say a red car is driving with two Hispanic males in the vehicle, were wearing a black jacket, and an officer is in the scene. Yeah, you're not really answering my question. I mean, I think the question has to be, yes, any officer anywhere, at least in Texas, who sees a vehicle on the road or the highway with a missing taillight, can pull that vehicle over because it's a traffic violation. That's correct, Judge. Okay, it doesn't have to be any other facts or circumstances or not. Yes, in this case that didn't happen because this vehicle that was located was parked in a driveway, it was turned off, they did not notice any broken taillight, they did not notice any defective taillight. The information from the shots fired call was that it was a black SUV with a broken taillight. And so they did not have this independent information to determine whether the car had been involved at all. And Officer Fierro admitted that they had no information to believe that the car that they entered into the polo was involved at all. And so then the last thing that I want to advise the court is that the judge in this case wrote that the officer had identified three individuals from a prior stop, when in fact the record on appeal shows that Officer Garza had identified two people Eduardo Ciprian and a minor that he had pulled over from a prior occasion because he found the plates of that particular car that was parked. Is that material? Three versus two? It is because that one of the reasons why the judge found that they had reasonable suspicion to pull over the car and to detain my client because she said that they identified my client by name. But in the reports and in the testimony that information was not provided. It was provided independently of any information and entered into the polo, which again causes the court to believe that the polo has all sufficient information. The distinguishing factor is if they would have located all of this information at the scene, if the officers would have pulled over a car and found or suspected that this vehicle was involved at the scene and entered into the polo, that would be a different situation. This is just by happenstance that they found a car two and a half miles away, entered the information into the system, and because of that, created a bulge. I would ask the court to sustain our issue on appeal. Thank you. Thank you. We appreciate your argument and we note that you're court appointed and appreciate your service.